UNITED STATES of America, Appellee,

v.

403.14 ACRES OF LAND, MORE OR LESS, IN ST. CLAIR COUNTY, STATE OF MISSOURI, et al., Appellants.

No. 76–1930.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1977.

Decided April 20, 1977.

Rehearing and Rehearing En Banc Denied May 17, 1977.

David L. Wells, North Kansas City, Mo., for appellant; S. Preston Williams, North Kansas City, Mo., on brief.

Eva R. Datz, U. S. Dept. of Justice, Washington, D. C., for appellee; Peter R. Taft, Asst. Atty. Gen., Carl Strass, Washington, D. C., Bert C. Hurn, U. S. Atty., and David M. Proctor, Jr., Asst. U. S. Atty., Kansas City, Mo., on brief.

Before VOGEL, Senior Circuit Judge, and LAY and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Appellants, James Willard Sikes and Emalue E. Sikes, his wife, appeal from a final judgment of the United States District Court for the Western District of Missouri [1] awarding just compensation for the taking by the government of 403.14 acres of land in St. Clair County, Missouri, which land was owned by Mr. and Mrs. Sikes prior to the taking.

The property was taken for use in connection with the Harry S. Truman Dam and Reservoir on the Osage River and was part of a larger tract consisting originally of 620.47 acres. The land is located just across the river from the City of Osceola. At the time of the taking it was being used as a farm on which field crops and livestock were produced. The farm was well improved by buildings and otherwise, and included a homesite on a bluff above the river which gave to the owners a commanding view of the river and of the city.

The judgment of the district court was based on an award made by a three-man commission appointed under the provisions of Fed.R.Civ.P. 71A(h). Since the taking was a partial one, the Commission correctly took the view that just compensation was to be measured by the difference between the fair and reasonable market value of the entire tract, as enhanced by the improvements thereon, immediately prior to the taking and the fair and reasonable market value of the remaining lands and improvements immediately after the taking. *See, e.g., United States v. Miller*, 317 U.S. 369, 63 S.Ct. 276 87 L.Ed. 336 (1943); *United States v. 1,162.65 Acres of Land in Henry and St. Clair Counties, Mo.*, 498 F.2d 1298 (8th Cir. 1974); *United States v. 967,905 Acres of Land in Cook et al. Counties, Minn.*, 447 F.2d 764 (8th Cir. 1971); *United States v. Birnbach*, 400 F.2d 378 (8th Cir. 1968).[2] The Commission found that the value of the entire farm immediately before the taking which occurred on July 9, 1975 was $245,000.00, and that the value of that portion of the farm that was not taken immediately after the taking was $84,000.00. The difference between those values, $161,000.00, was awarded by the Commission as just compensation.[3]

Both sides objected to the report and award of the Commission. The government contended that the award was too high. The landowners contended that it was too low and also contended that the report of the Commission, as such, did not measure up to the guidelines laid down in *United States v. Merz*, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964).

The district court overruled the objections of both sides and approved and adopted the report of the Commission. Final judgment was entered on October 1, 1976, and the landowners' notice of appeal was filed on the same day.

For reversal, the landowners contend, as they did in the district court, that the Commission's report was inadequate as a document, that the award was inadequate to constitute just compensation, and that the Commission's ultimate finding as to compensation is speculative and lacks adequate evidentiary support. The government has

1. The Honorable John W. Oliver, United States District Judge.

2. The depreciation in value of the portion of the lands not taken that results from a partial taking is "somewhat loosely" referred to as "severance damage." *United States v. Miller, supra*, 317 U.S. at 376, 63 S.Ct. 276. Where in the case of a partial taking just compensation is measured by the difference between the "before" and "after" values shown by the evidence, there is no occasion for the making of any special award or determination of "severance damage," because the matter is included in the finding of what the remainder of the land was worth immediately after the taking. Of course, in determining that value the fact finder will take into consideration all factors of value that would influence a reasonable seller and a reasonable buyer in negotiating for a separate sale of the property that was left to the former owner after the taking.

3. When the complaint in condemnation and the declaration of taking were filed on July 9, 1975, the government deposited in the registry of the district court as estimated just compensation the sum of $99,300.00, most of which was disbursed under an interlocutory order of the district court.

not cross-appealed and simply asks that the judgment of the district court be affirmed.

Some general comments about the Sikes property appear to be desirable.

A substantial portion of the farm was located in the Osage River bottom, and the rest was upland. The bottom land and the upland were separated from each other by the bluff that has been mentioned, but the farm was operated as a unit and its highest and best use was operation as a diversified farm. Field crops, such as corn, wheat and milo, were produced in the bottom, and livestock were pastured on the upland.

Immediately prior to the taking, the farm consisted of 150 acres of bottom crop land; 35 acres of tillable upland; 55 acres of open upland pasture; an island consisting of ten acres of land; a five-acre lake; a farmstead of two acres; and 360.97 acres of timber, some of which was located in the bottom and the rest of which was upland. Farm roads took up 2.5 acres.

The improvements on the farm included a residence, a tenant house, and two barns, all of which were located on the farmstead which was on the bluff overlooking the river.

There is no question that the holding was a valuable one.

The government took all of the land except 217.33 acres. Left to the landowners were the farmstead and the improvements thereon; all of the upland pasture; 30 acres of tillable upland; 129.83 acres of timber; and .5 of an acre devoted to what is left of the farm road system. The severance of the farm has necessitated or will necessitate the construction of a substantial fence to prevent the landowners' cattle from drifting onto that part of the property that the government condemned.[4]

As the Commission recognized, the partial taking substantially reduced the value of the portion of the farm that was not taken. There is left to the landowners the use of the remainder as a rural residence and livestock farm, but without the lake and without the contribution that the bottom crop land may have made to the livestock operation. Further, the remainder is overly improved in relation to the decreased size of the farm and the more limited uses for which it is available.

We take up, first, appellants' attack on the sufficiency of the Commission's report.

 Under Rule 71A(h), which must be read in connection with parts of Rule 53 which relates to special masters, the findings of a condemnation commission are required to be accepted by the district court unless clearly erroneous. However, those findings must be expressed in an adequate report.

In *United States v. Merz, supra*, the Supreme Court recognized the propriety of the use of commissions in eminent domain cases but took note of the danger that a commission, functioning without the immediate supervision of the appointing judge, would act in a "free wheeling" manner and would undertake to assess just compensation without regard to proper legal standards and procedures and on the basis of its own ideas as to values regardless of the evidence produced before it.

 Accordingly, the Supreme Court emphasized the importance of the district courts' giving proper instructions to commissions as to their duties, as to the rules of law that they were to apply, and as to the procedures that they should follow. And the Court also laid down certain guidelines as to what the report of a commission should contain. 376 U.S. at 198–99, 84 S.Ct. 639.[5]

 While a commission is not required to make specific findings as to every

---

4. The district court permitted the landowners to retain possession of all of the land, subject to the payment of reasonable rent, from the date of taking until January 1, 1976. We are not advised as to whether necessary fences in fact have been built.

5. Perhaps the leading case in this circuit construing and applying *Merz* is *Morgan v. United States*, 356 F.2d 17 (8th Cir. 1966), the opinion in which case was written by Mr. Justice (then Circuit Judge) Blackmun. Other Eighth Circuit cases are *Ozark Real Estate Co. v. United*

subsidiary and separate factual issue that presents itself, mere ultimate and conclusory findings as to values do not suffice. The report should be sufficiently detailed to show that the commission understood the legal issues before it and the correct legal rules to be applied in determining just compensation. The report should show the reasoning that the commission employed in reaching its decision as to the amount of the award; and it should show the standard followed by the commission, the line of testimony adopted, and other pertinent decisional factors.

The Supreme Court said, 376 U.S. at 199, 84 S.Ct. at 643:

> . . . We do not say that there must be an array of findings of subsidiary facts to demonstrate that the ultimate finding of value is soundly and legally based. The path followed by the commissioners in reaching the amount of the award can, however, be distinctly marked. Such a requirement is within the competence of laymen; and laymen, like judges, will give more careful consideration to the problem if they are required to state not only the end result of their inquiry, but the process by which they reached it.

In dealing with the adequacy of the instructions given to a commission by a district court and of a report filed by a commission this court in *Morgan v. United States*, 356 F.2d 17 (8th Cir. 1966), said:

> We . . . read *Merz* as requiring not meticulous compliance with every particular therein mentioned, but as suggesting standards which assure fairness to both condemnor and condemnee and provide safeguards against a commission's natural tendency, when not con-

trolled, to use its own assumed [technique].

356 F.2d at 23.

After discussing to some extent the instructions that had been given to the commission by the district court in *Morgan*, this court then went on to say (*Ibid.*):

> Further, we feel that, if the court's instructions were deficient in any respect, the ensuing commission hearing was fairly and objectively conducted anyway and that the report which was filed adequately and informatively discloses the path which the commission followed in arriving at its award. After all, this path is the desired goal of careful and appropriate instructions and of the report requirement.[6]

■ In its Memorandum and Order of September 9, 1976, adopting the Commission's report in this case, the district court said: " . . . it is apparent from the Report that the Commission carefully considered all of the evidence and rendered findings with sufficient detail to reveal the process by which it reached its final conclusions. . . . " We agree.

The report, which occupies some fourteen pages of the printed appendix that is before us, is a detailed, factual and well written document. It sets out the date of taking; it sets out the ultimate finding of the Commission as to the value of the property before the taking and as to the value of the remainder after the taking, and the difference between the two sums. It sets forth in tabular form the opinion testimony of the expert called by the landowners and that of the two experts called by the government. It then proceeds to state the case and to set out certain stipulated facts. Proceeding, it summarizes the testimony of-

*States*, 377 F.2d 88 (8th Cir. 1967); *United States v. Bell*, 363 F.2d 94 (8th Cir. 1966); and *Mills v. United States*, 363 F.2d 78 (8th Cir. 1966). We note that counsel have not cited any more recent Eighth Circuit "*Merz* cases," and we have seen none. It is inferable that during the last ten years the district courts in this circuit which have had occasion to appoint commissions in condemnation cases have been careful to follow the teachings of *Merz*, and

that the commissions appointed in recent years, the members of each of which ordinarily include a lawyer, have been willing and able to prepare satisfactory reports.

6. In the instant case no complaint is made as to the instructions given by Judge Oliver to the Commission. The attack is limited to the Commission's report.

fered by the landowners and then summarizes that offered by the government. The report then discusses the evidence on both sides and sets out its finding that the value of the property before the taking was $245,000.00, and that the value of the remainder immediately after the taking was $84,000.00.

■ Regardless of the correctness or incorrectness of the Commission's ultimate finding, the report clearly shows the factual bases for the finding, and clearly marks the path that the Commission followed in arriving at its conclusion. And that is all that is required of a commission report. There is no requirement that such a report be perfect in form or structure or that it be immune from all criticism that can be advanced by diligent counsel dissatisfied with the result reached by a commission.

■ Turning now to the claims of the landowners that the award was grossly inadequate, that it was based on speculation, and that it lacks sufficient evidentiary support, it must be kept in mind that it was not the function of the district judge nor is it our function to try the case de novo or to weigh questions of the credibility of witnesses or the weight to be given to their testimony. Those were the functions of the Commission, and its findings must be accepted unless clearly erroneous.

■ From our consideration we are satisfied that the Commission's findings were based on evidence and not on any "assumed expertise" on the part of the Commission, and we are also satisfied that the Commission was not improperly influenced by the view of the premises that it took prior to the hearing. The award of $161,000.00 was well within the range of the testimony; it was $61,700.00 in excess of the amount of the government's initial deposit, and it was only $25,000.00 below the figure put forward by the landowners' expert, Scott. The award was about $55,000.00 more than that called for by the testimony of the government's expert, Kelly, and about $60,000.00 more than would have been warranted by the testimony of the government's expert, Dane. The Com-

mission was not required to accept the testimony of any of the experts at face value, and ordinarily in a case of this kind where the award is within the limits of the testimony, that is the end of the matter. *United ed States v. 1,162.65 Acres of Land in Henry and St. Clair Counties, Mo., supra,* 498 F.2d at 1301.

As far as the "after the taking" value of the remaining land was concerned, there was not a great deal of difference between the opinion of Mr. Scott, on the one hand, and those of Messrs. Kelly and Dane, on the other hand. The real difference between the parties related to the "before taking" value of the entire tract. Scott put that value at $275,000.00; Kelly put it at $182,500.00, and Dane fixed it at $181,500.00.

The Commission thought that the government witnesses undervalued the property, and that the undervaluation was due in part to the idea that they held, at least to some extent, that upland in Western Missouri is worth more than bottom land, an idea that did not appeal to the Commission, at least as far as this particular land was concerned. On the other hand, the Commission thought that Scott's valuation was too high as a result of his minimizing certain minus factors of value and his over emphasizing the extent to which the improvements on the property enhanced its before taking value. We think that the Commission's evaluations of the testimony were permissible and well within the scope of the Commission's authority.

We have considered a number of specific points raised by the landowners and do not find that they call for reversal. No useful purpose would be served by prolonging the discussion. It appears to us that the award of the Commission was adequately supported by the evidence and was not clearly erroneous.

The judgment of the district court is affirmed.