**FARMLAND PRESERVATION ASSOCIATION; Community Action Research Group of Iowa, Inc., Norman Clare Sloan, Appellants,**

v.

**Neil GOLDSCHMIDT, Secretary, United States Department of Transportation, et al., Appellees,**

**Waterloo Chamber of Commerce et al. (Intervenors), Appellees.**

No. 79–1583.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1979.

Decided Dec. 10, 1979.

Bruce J. Terris, Washington, D. C., for appellants; Edward Comer, Washington, D. C., and Keith Mossman, of Mossman & Mossman, Vinton, Iowa, on brief.

Robert W. Goodwin, Sp. Asst. Atty. Gen., Iowa Department of Transp., Ames, Iowa, for the State appellees.

David C. Shilton, Atty., Dept. of Justice, Washington, D. C., for Federal appellees; Jacques B. Gelin, Washington, D. C., James H. Reynolds, U. S. Atty., Cedar Rapids, Iowa, and James W. Moorman, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., on brief.

Cecil L. Goettsch, Kent M. Forney and Patrick B. Northup, Des Moines, Iowa, on brief, for appellees, Waterloo Chamber of Commerce, et al.

Before LAY, HEANEY and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This is an environmental case in which plaintiffs appeal from a final order of the United States District Court for the Northern District of Iowa (The Honorable Edward J. McManus, Chief Judge) denying plaintiffs' motion for summary judgment and granting a cross-motion for summary judgment filed by the defendants. We affirm.

The action was commenced by or on behalf of a number of Iowa farmers for the purpose of opposing the proposed construction of federal Interstate Highway 380 (I–380) along a 47.6 miles segment running in a southeast to northwest direction between the Cities of Cedar Rapids and Waterloo. Plaintiffs claim that the final environmental impact statement (EIS) that was prepar-ed in connection with the project as required by the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq., was inadequate in that it allegedly did not properly discuss certain alternatives to the proposed construction, as required by 42 U.S.C. § 4332(2)(C)(iii). Plaintiffs claim that they will be damaged irreparably by the proposed construction, and they seek declaratory and injunctive relief; they also seek relief in the nature of mandamus. Additionally, plaintiffs seek an award of costs and attorneys' fee. Federal subject matter jurisdiction was properly based on 28 U.S.C. § 1331(a) and § 1361.

The defendants deny that plaintiffs are entitled to any relief, and, as indicated, the district court agreed with the defendants.

Plaintiff, Farmland Preservation Association, is a non-profit Iowa corporation that was formed in 1976 by about forty-five Iowa farmers to oppose the project in question. Those farmers own and operate farms in Linn, Benton, Buchanan and Black Hawk Counties between Cedar Rapids and Waterloo.

One of those farmers is Norman Clare Sloan who appears as an individual plaintiff. The third plaintiff is Community Action Research Group of Iowa, Inc., another Iowa non-profit corporation. It is based in Ames, Iowa and is engaged in doing research work and providing consulting services in certain fields including the environment and technology. Supporting the position of the farmers, that corporation has joined them as a plaintiff.

As in some other environmental cases involving Interstate Highway construction, we have two sets of defendants. The federal defendants are the Secretary of the United States Department of Transportation and the Director of the Federal Highway Administration (FHWA). The state defendants are the Director of the Iowa Department of Transportation, formerly known as the Iowa State Highway Commission, and the individual members of the Iowa Transportation Commission.[1]

---

1. Without objection a number of Iowa entities were permitted to intervene in the case and align themselves on the side of the defendants.

Their position is the same as that of the defendants, and there is no occasion to mention them further.

The suit was filed on November 6, 1978. The plaintiffs attacked the EIS in question on a number of grounds including the claim that the statement did not discuss an alleged alternative of building a road between Cedar Rapids and Waterloo to design standards less rigorous than those required of Interstate Highways, and did not discuss adequately the alternative of not building any highway at all through the area.

After the case came to issue, the parties entered into a very full and helpful stipulation covering many of the material facts of the case; other facts were developed otherwise by documentary evidence. In due course both sides moved for summary judgment under Fed.R.Civ.P. 56(a) and (b). A voluminous record, including thorough memorandum briefs, was assembled and submitted to the district court.

Judge McManus concluded, and we agree, that the case presented no genuine issue as to any material fact and that summary disposition of the case under Rule 56 was appropriate. On June 19, 1979 the district judge filed a full memorandum opinion upholding the position of the defendants and rejecting the claims of the plaintiffs. Final judgment having been entered, this appeal was timely taken.[2]

### I.

■ 42 U.S.C. § 4332(2)(C) requires that there must be included in every federal recommendation for major federal action significantly affecting the quality of the human environment a detailed written statement dealing with (1) the environmental impact of the proposed action; (2) any adverse environmental effects that cannot be avoided should the proposal be implemented; (3) alternatives to the proposed action; (4) the relationship between the local short-term use of the environment and enhancement of long-term productivity; and (5) any irreversible and irretrievable commitments of resources that would be involved in the proposed action should it be implemented.[3]

The Council on Environmental Quality (CEQ) established by Title II of NEPA, 42 U.S.C. §§ 4341–47, has promulgated guidelines for the preparation of the statements required by § 4332(2)(C), and those guidelines appear as 40 CFR § 1500.1 et seq. The required discussion of alternatives must include a discussion of what may be called the "no action" alternative. 40 CFR § 1500.-8(a)(4).

The federally funded highway program in this country is governed in general by relevant provisions of the Federal-Aid Highways Act, as frequently amended, that now appears as 23 U.S.C. § 101 et seq. as implemented by regulations that appear in Title 23 of the Code of Federal Regulations. The program is administered by FHWA which is an agency within the federal Department of Transportation. Construction of an Interstate Highway is funded to the extent of ninety per cent by the federal government.

The parties have stipulated by reference to 23 U.S.C. §§ 103(e) and 109(b) that the Secretary of Transportation is required to approve requests of state highway departments for Interstate Highway routes and must approve the plans and specifications for each Interstate Highway.

---

**2.** Following entry of judgment plaintiffs moved for a stay pending appeal as provided by Fed.R. Civ.P. 62(d). Specifically, they desired that the defendants be enjoined from further land acquisitions in the area until the appeal could be decided by this court. The district court denied the relief requested; it was granted, however, by this court which directed that the appeal be expedited; the stay is still in effect.

**3.** We note at this point that where Interstate Highway construction is involved the responsibility for preparing an adequate EIS rests on FHWA, and the task of preparing a proper statement cannot simply be delegated by the federal agency to state highway authorities. See Arkansas Community Organization for Reform Now v. Brinegar, 398 F.Supp. 685, 696 (E.D.Ark.1975), aff'd sub nom. Arkansas Community Organization for Reform Now v. Coleman, 531 F.2d 864 (8th Cir. 1976), and cases cited.

The parties have further stipulated that all Interstate Highways must be controlled access, divided highways with a minimum of four traffic lanes as provided in 23 U.S.C. § 109(b) and 23 CFR § 625.3(a)(3), which in turn refers to a publication issued by the American Association of State Highway and Transportation Officials (AASHO) in 1969 entitled "A Policy on Design Standards Interstate System."

## II.

■ The adequacy of a final EIS prepared by a federal agency is subject to limited judicial review in the federal courts. While the scope of that review has been articulated variously in numerous decisions of the Supreme Court, the several courts of appeals, and the district courts, the scope is actually well defined.

In a case like this, a district court is required to perform two functions. First, it must determine whether the challenged EIS is adequate as a statement to satisfy the requirements of NEPA. If that question is answered in the affirmative, then the district court is required to go further and engage in a limited substantive review of agency action to determine whether it passes muster under the scope of review provisions of the Administrative Procedure Act, 5 U.S.C. § 706. However, it is not the function of the federal court ultimately to pass on the merits of the contemplated action or to substitute its judgment for that of the agency. *See Arkansas Community Organization for Reform Now v. Brinegar,* 398 F.Supp. 685, 695–96 (E.D.Ark.1975),[4] and cases cited, including *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), and *Iowa Citizens for Environmental Quality v. Volpe,* 487 F.2d 849, 852–53 (8th Cir. 1973).

## III.

■ We take notice of the fact that the rural area between Cedar Rapids and Waterloo that will be traversed by I–380 consists of extremely valuable farm lands adapted to various agricultural uses.

Farms in Iowa, as in other midwestern states, are generally laid out and operated by reference to government surveyed mile square sections with each section containing 640 acres. And local roads in the area usually run along section lines the directions of which are either north to south or east to west.

In this day and time commercial agriculture, as practiced in Iowa and elsewhere, involves the use of huge, unwieldy pieces of farm equipment. A farmer desiring to make efficient use of his equipment will normally try to conduct his farming operations along straight lines, thus avoiding the "short rows" that a diagonal operation would entail.

The contemplated highway, if built, will force the affected farmers into just the type of diagonal operations that they want to avoid to say nothing of their losses of lands actually taken for use in connection with the project. Additionally, assuming a controlled access road, a farmer left with land on both sides of the Interstate Highway may have to move his machinery and equipment several miles to get a few yards from one part of his farm to the other.

■ The landowners are entitled, of course, to just compensation for their lands that are taken in connection with the project. United States Constitution Amendment 5, Iowa Constitution, Article I, § 18. And where, as here, partial takings are involved, the landowner is entitled to be compensated not only for the value of his land that is actually taken, but also for the diminution of the value of what is left to him after the taking. The proper measure of compensation in such a case is the difference between the fair and reasonable market value of the entire ownership immediately before the taking and the fair and reasonable market value of what is left immediately after the taking. *See United States v. 91.90 Acres of Land Situate in Monroe County, Mo.,* 586 F.2d 79 (8th Cir. 1978), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979); *Twin-State Eng'r. & Chem. Co. v. Iowa State Highway*

---

4. *Aff'd sub nom. Arkansas Community Organization for Reform Now v. Coleman,* 531 F.2d

864 (8th Cir. 1976). An earlier reference to the "ACORN" case appears in n.3, *supra.*

*Comm'n.*, 197 N.W.2d 575, 577–78 (Iowa 1972); *Freshwater v. Wildman*, 254 Iowa 404, 117 N.W.2d 910, 912–13 (1962).

This measure of just compensation, while legally established, is frequently not satisfactory in the eyes of affected landowners who would prefer to keep their lands and let just compensation go. That would seem to be the case here.

That a direct, diagonal highway between Cedar Rapids and Waterloo will provide distinct advantages over existing routes to truckers and motorists is obvious from an examination of an Iowa highway map. That such a highway will be of benefit to farmers whose lands lie along the way is certainly not so clear. In fact, it is obvious that the disadvantages to some of them will outweigh the advantages.

### IV.

This project has a long history, running back to 1956, which is fully covered by the stipulation of the parties and the opinion of the district court and which need not be outlined here in any great detail.

In late December, 1972 the Iowa State Highway Commission voted to build an Interstate Highway between Cedar Rapids and Waterloo. Prior to that time "informational hearings" and "corridor hearings" of a public nature had been conducted at several points in Iowa along the route of the proposed road.

A preliminary EIS covering the project was approved in 1971 and the final EIS was approved in June, 1975. Thereafter in the winter, spring and early summer of 1978 public "design hearings" were conducted with respect to the project. Plaintiffs were present or were represented at those hearings.

At length, between June and September, 1978 the project was finally approved by FHWA. By the date of the commencement of the action the Iowa Department of Transportation had acquired a number of tracts of land and had appraised many others. The Department seems to have contemplated completion of land acquisitions in 1979.[5] Generally, commencement of actual construction was not contemplated prior to April, 1980. This litigation has doubtless set back the State's timetable.

### V.

In the district court plaintiffs attacked the final EIS on a number of grounds, all of which were considered and found to be without merit by the trial court. Here, plaintiffs claim only that the EIS did not adequately discuss the "no action" alternative and did not discuss the alternative of building a "less than Interstate" highway from Cedar Rapids to Waterloo.[6]

The discussion of the "no action" alternative was brief and is as follows:

The alternative of 'doing nothing' is the final alternative that must be considered in the development of this project. This obviously would avoid the direct costs incurred in construction but, at the same time, project goals remain unfulfilled. That is the construction of this Interstate facility as an integral part of the comprehensive planning of the two major urban areas involved, would not be realized. The estimated traffic needs of the present and future would not be met. The present facilities now serving the traffic between Cedar Rapids and Waterloo will become increasingly unable to accommodate rising traffic volumes. This fact will contribute to the potential accident rate of an overcrowded roadway.

However, doing nothing would result in less change to the environment of the corridor and, therefore, this area would not experience the adverse environmental impacts usually associated with the construction and operation of a new roadway. On the other hand, it is believed by some, including the Linn County Regional Planning Commission (Section VIII) that choosing not to construct the facility

---

5. We assume that "acquisitions" would include not only lands acquired by direct purchase but also lands immediate possession of which had been obtained by the State under relevant Iowa eminent domain statutes.

6. Such a road might well be narrower than an Interstate Highway and it might not have as much access control as an Interstate Highway requires.

would have a greater negative impact than would construction of any of the alternates considered.

Plaintiffs complain that the discussion was not sufficiently detailed. There was not much to say about that alternative. The adoption of the alternative would simply have left things as they were; the farmers would not have their farms bisected, and highway traffic would have to continue to use roundabout existing routes. Judge McManus said:

> Plaintiffs first contend that the discussion of the 'no action' alternative, involving two paragraphs in the final EIS (*see* EIS at p. 62), was inadequate. The court is of the opinion, however, that the paginal length of an alternatives discussion is not in itself controlling. Furthermore, it should be noted again that an EIS need not be exhaustive or inordinately detailed. *Iowa Citizens for Environmental Quality, Inc. v. Volpe*, 487 F.2d 849, 852 (8th Cir. 1973). It need only be sufficient to serve as a *basis* for consideration of the environmental impacts of the various reasonably feasible alternatives available. *Id.*, at 851. *See, Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 551 [98 S.Ct. 1197, 55 L.Ed.2d 460] (1977).[10]
>
> [10] 'But, as should be obvious even upon a moment's reflection, the term "alternatives" [in NEPA, 42 USC § 4332(c)] is not self-defining. To make an impact statement something more than an exercise in frivolous boilerplate ·the concept of alternatives must be bounded by some notion of feasibility.' 435 U.S., at 551 [98 S.Ct. 1197].
>
> The court cannot conclude, therefore, that the two paragraph discussion of the no action alternative was arbitrary or unreasonable under the circumstances involved. *Compare, Vermont Yankee, supra*, at 549–55 [98 S.Ct. 1197].

■ We see no occasion to elaborate; we agree with the district court.

We proceed finally to a consideration of the other claim, namely that the EIS did not adequately discuss the possibility of the construction of a highway in the area in question to less than Interstate Highway standards. The district court considered and rejected that contention. Again, we agree.

The trouble with plaintiffs' argument is that if a road is built from Cedar Rapids to Waterloo, it will either be an Interstate Highway or it will be something else. The state and federal authorities have decided on an Interstate Highway, and the road will have to be built to Interstate standards; lesser standards will not do.

The district judge held that the alternative now in question amounted to nothing but the "no action" alternative. And he went on to say:

> The court emphasizes again that it is not its function to substitute its substantive judgment for that of the responsible agencies with respect to what alternative should have been selected as the 'best.' *Vermont Yankee, supra*, 435 U.S., at 555 [98 S.Ct. 1197]. *The substantive balancing of environmental against other important national goals and policies is the discretionary function of the administrative decision-makers.* The court views plaintiffs' contentions with respect to alternatives to constitute an invitation for the court to substitute its substantive decision for that already made by defendants. *As such, the court must, of course, decline.*
>
> In conclusion, the court finds the EIS' discussion of alternatives not unreasonable in light of the circumstances surrounding the action actually pending before the responsible agencies; which include the interstate highway design requirements imposed by federal laws and regulation, and the content of public hearings held for purposes of deciding what alternative should be selected. *See, Vermont Yankee, supra*, 435 U.S., at 549–55 [98 S.Ct. 1197]; *Environmental Defense Fund, Inc. v. Hoffman*, 566 F.2d 1060, 1071–72 (8th Cir. 1977); *Iowa Citizens for Environmental Quality, Inc. v. Volpe*, 487 F.2d 849, 852–53 (8th Cir. 1973). [Emphasis supplied.]

■ It has been argued that under the provisions of 23 U.S.C. § 103(e)(4) (Supp. 1973), the Secretary might agree to a withdrawal of the segment in question from the Interstate System upon the request of the Governor of Iowa and the local governments concerned and that federal funding

for a highway built through the area to less than Interstate Highway standards could be obtained. In the course of the argument we requested that supplemental briefs be filed dealing with that particular contention.

We have now considered that argument and find ourselves in agreement with the defendants that the substitution postulated by the plaintiffs would be a remote and speculative possibility not required to be discussed in the final EIS that was prepared in 1975. The substitution could not have been made under § 103(e)(4) as it was written in 1975 and in view of the length of the project it is doubtful that the substitution could be made under an amendment to the statute that was adopted in 1976 after the EIS was approved.

In view of what has been said, we feel that the judgment of the district court should be affirmed and that our stay of land acquisitions pending appeal should be vacated.

Affirmed and stay vacated.