**UNITED STATES of America, Appellee,**

v.

**9.20 ACRES OF LAND, MORE OR LESS, SITUATE IN POLK COUNTY, STATE OF IOWA; Central National Bank.**

**Appeal of Benford M. WALKER.**

**No. 80–1427.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 31, 1980.

Decided Jan. 7, 1981.

James W. Moorman, Asst. Atty. Gen., Washington, D. C., Roxanne Barton Conlin, U. S. Atty., Kermit B. Anderson, Asst. U. S. Atty., Des Moines, Iowa, Edward J. Sha-waker, Robert D. Clark, Attys., Dept. of Justice, Washington, D. C., for the United States.

Benford M. Walker, pro se.

Before ROSS, STEPHENSON and HENLEY, Circuit Judges.

PER CURIAM.

Benford Walker appeals from a judgment of the district court[1] which awarded him $15,000 for a parcel of land condemned by the United States. The judgment was based on an award made by a commission appointed under Fed.R.Civ.P. 71A(h). We affirm the district court.

On September 16, 1977, the Secretary of the Army filed a declaration of taking in the United States District Court for the Southern District of Iowa for 9.2 acres of land in Polk County, Iowa, owned by Benford Walker. The 9.2 acres were part of a 37.38 acre tract owned by Walker and were condemned for inclusion in Saylorville Lake and Dam Project in central Iowa. $13,000 was deposited in the district court registry on September 16, 1977, as an estimate of the value of the 9.2 acres.

On February 16, 1979, the district court entered an order appointing a commission of three persons to determine the issue of just compensation pursuant to Fed.R.Civ.P. 71A(h). The commission held a trial on May 14, 1979, and filed a seven-page report on May 22, 1979, which (1) generally described Walker's 37.38 acre tract and the 9.2 acres taken by the government; (2) noted that in determining the compensation award for the 9.2 acres taken, the commission was bound by the instructions given by the district court "to which no objections have been made"; (3) summarized the testimony of landowner witnesses E. J. Peters, John Donohoe, Grover H. Hahn, and Walker himself; and (4) summarized the testimony of the government's sole witness, Wayne Hennessey. The commission credited Hennessey's testimony over the landowner witnesses' testimony:

---

1. The Honorable William C. Stuart, United States District Judge for the Southern District of Iowa.

Comparing the opinions of the two professional appraisers, Donohoe and Hennessey, we note their opinions of reasonable market value before taking varied only $760. They differed as to after taking value due to Donohoe's allowance of severance damage based on his opinion that the highest and best use of some of Walker's land was for residential development.

After study and review of the entire record we agree with Hennessey's opinion that no severance damage should be considered.

We conclude just compensation to Walker in his case is the sum of $15,000. Therefore, he is awarded the sum of $15,-000.[2]

The record before this court includes a two-volume transcript of the May 14, 1979, trial before the commission.

On June 25, 1979, Walker filed objections to the commission's report,[3] and the United States filed a detailed response to Walker's objections on July 19, 1979. On March 21, 1980, the district court held a hearing on Walker's objections to the commission's report and filed its decision on March 25, 1980. The court overruled each of Walker's contentions and concluded that the commission's report "was not clearly erroneous in any material respect" and accordingly approved the report. The district court entered a $15,000 judgment, with 6% interest from September 16, 1977, until deposited, against the United States and ordered an additional $2,000 deposit in the court registry.[4] The district court entered an order for final distribution of the award on May

6, 1980, and Walker filed a pro se notice of appeal to this court on May 27, 1980.[5]

In this appeal Walker first contends that the government violated federal statutes because it deposited $13,000 in the court registry instead of $15,000. Walker asserts this "improper action" deprived him of full use of the funds and left him in a technically and financially inferior position for dealing with the government. In response, the government contends (1) the $13,000 deposit was proper as estimated compensation for the parcel taken, citing 40 U.S.C. § 258a, and (2) the court registry deposit is merely an estimate, and if the landowner is ultimately awarded a greater amount, he may recover the excess with interest.

■■■ The government's position is correct. A deposit in the court registry is merely an estimate, and if the judgment ultimately awarded is in excess of the amount deposited, the owner "shall" recover the excess with interest. *United States v. Miller,* 317 U.S. 369, 381, 63 S.Ct. 276, 283, 87 L.Ed. 336 (1942) (recognizing that there may be an error in the estimate). *See also United States v. 2,187.43 Acres of Land,* 461 F.2d 938, 940 (8th Cir. 1972) (the amount deposited is merely an estimated compensation).

■■■ Walker's second contention is that the commission's $15,000 award as just compensation for the land taken was clearly erroneous. Specifically, Walker asserts that (1) government witness Hennessey was unqualified to appraise the 9.2 acres and therefore his testimony should have been "completely disregarded"; (2) the value of the timber and special stock nut trees on

---

2. As will be subsequently discussed in text, the concept of "severance damages" in partial taking cases is often misleading. The term will be defined *infra*.

3. Specifically, Walker argued that (1) appointment of a commission was improper and denied his right to a jury trial; (2) several instructions given to the commission, specifically, numbers 4, 6 and 8, were "contrary to the law"; (3) the $15,000 compensation award was wholly inadequate; (4) the award was not supported by the evidence (listing several alleged specific shortcomings); and (5) the commission's refusal to grant a continuance was erroneous and extremely prejudicial.

4. The district court ordered the additional deposit of $2,000 plus interest because, as noted earlier, the government originally deposited $13,000. The additional deposit was received by the district court on April 11, 1980.

5. Although represented by counsel before the commission and the district court, Walker is acting pro se on this appeal. On June 23, 1980, we ordered that the appeal be considered on the district court's original files in lieu of a designated record.

the parcel were not considered in establishing the compensation award; (3) the commission should have credited landowner's sand and gravel witness Peters and accordingly should have determined that the property's highest and best use was for sand and gravel operation; (4) the sale properties discussed by government witness Hennessey were really not comparable properties; (5) the commission improperly failed to award "severance damages" for the creek loss due to the condemnation, and Hennessey's testimony was incorrectly credited over landowner witness Donohoe's testimony; and (6) the instructions to the commission were inadequate because they lacked examples of "severance damages." Walker requests alternative relief from this court: (1) Establish just compensation for the parcel as a "combination of the values assigned by Mr. Peters as concerned the gravel, by Mr. Walker as concerned the timber, and by Mr. Walker as concerned the severance damages"; or (2) remand for new trial.[6] Walker's first request is not legally appropriate because the "landowner is not entitled to have all factors affecting the value of his property added together and to have the total of the additions taken as the reasonable market value of his land." *United States v. 91.90 Acres of Land, supra,* 586 F.2d at 87. Therefore, the essential issue is whether the case should be remanded for a new trial.

The government responds that the $15,-000 award is supported by the evidence and specifically contends that (1) this court has a limited scope of review; (2) the commission properly credited government witness Hennessey against Walker's witnesses; (3) Hennessey considered the timber and creek values in his calculations; (4) Walker fell short of establishing a credible value for the alleged sand and gravel deposits in the parcel; and (5) the commission adequately explained its conclusions and reasoning process.

■ In considering the contentions of the parties, we initially observe that the scope of our review is limited. If the condemnation commission distinctly marks the path it follows in making a specific compensation award, and if the district court adopts the commission's report, the court of appeals must determine whether the report, as adopted by the district court, is "clearly erroneous." *United States v. Merz,* 376 U.S. 192, 199, 84 S.Ct. 639, 643, 11 L.Ed.2d 629 (1964). *See also United States v. 403.14 Acres of Land,* 553 F.2d 565, 570 (8th Cir. 1977) (the findings of the condemnation commission must be accepted unless clearly erroneous); Fed.R.Civ.P. 71A(h) (condemnation commission's findings and report shall be dealt with by the court in accordance with Fed.R.Civ.P. 53(e)(2)); Fed.R. Civ.P. 53(e)(2) (the court shall accept the master's [in this case, the condemnation commission's] findings of fact unless clearly erroneous).

■ In addition, the "scope of the evidence" rule is applied in condemnation cases. "The rule is that an award of just compensation will not be disturbed if it is within the scope of the evidence. Generally, this rule can be simply applied by determining whether the award falls within the extremes of the adverse parties' opinion testimony." *United States v. 1,162.65 Acres of Land,* 498 F.2d 1298, 1301 n.5 (8th Cir. 1974). However, a factfinder's compensation verdict which is outside the range of the experts' ultimate value opinions for the property may also be upheld where the verdict is supported by other evidence. *Id.* at 1301 and n.5. *See also United States v. 38.60 Acres of Land,* 625 F.2d 196, 201, 201 n.9 (8th Cir. 1980) (scope of the evidence rule defined).

■ Where partial takings are involved, "the landowner is entitled to be compensated not only for the value of his land that is actually taken, but also for the diminution of the value of what is left to him after the taking." *Farmland Preservation Ass'n v. Goldschmidt,* 611 F.2d 233, 237 (8th Cir. 1979). In partial taking cases, the

---

**6.** Walker's pro se brief actually requests alternatively that the entire proceeding be "reinstituted" in the district court. This request appears to be one for a new trial on the compensation award.

proper measure of compensation is the difference between the fair and reasonable market value of the entire ownership immediately before the taking and the fair and reasonable market value of what is left immediately after the taking. *Id.; United States v. 91.90 Acres of Land*, 586 F.2d 79, 86 (8th Cir. 1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979); *United States v. 403.14 Acres of Land*, 553 F.2d 565, 567 (8th Cir. 1977). *See also United States v. 38.60 Acres of Land, supra*, 625 F.2d at 198–99 (where we thoroughly discussed the measure of damages in partial taking cases).

Our recent decisions have discussed the misleading nature of the term "severance damages" as used in partial taking cases. In *United States v. 38.60 Acres of Land, supra*, 625 F.2d at 198–99, we stated: "Thus, in a partial taking, the landowner may recover as just compensation not only the fair market value of the land actually taken, but also severance damages for the diminution in value of the remainder directly caused by the taking itself and by the use of the land taken." (Footnote omitted.) "Severance damages" were defined thus:

> As noted by Judge Henley in *United States v. 91.90 Acres of Land, supra*, 586 F.2d at 86 (citations omitted):
>
> It is incorrect to think of "severance damage" as a separate and distinct item of just compensation apart from the difference between the market value of the entire tract immediately before the taking and the market value of the remainder immediately after the taking. In the case of a partial taking, if the "before and after" measure of compensation is properly submitted to the jury [or in the present case, considered by the commission], there is no occasion for the lawyers or the trial court to talk about "severance damage" as such, *and indeed it may be confusing to do so. The matter is taken care of automatically in the "before and after" submission.*

*Id.* at 199 n.2 (emphasis added).

 In addition, and although it is technically incorrect to think of severance damage as a distinct item of just compensation, we will be reluctant, in the absence of any other error, to reverse a condemnation award "merely because the commission's report expressly identified a specific amount of its award as severance damages, especially where the award is within the 'scope of the evidence' rule, that is, within the limits of the testimony." *Id.* at 201 (footnote omitted).

 After reviewing the record, we conclude that the commission was justified in crediting witness Hennessey over the landowner witnesses. Hennessey's formal qualifications are stronger than the landowner witnesses, as is his practical appraisal experience. In considering Walker's parcel, Hennessey's appraisal utilized the cost approach (estimating the value of different classes of land), the market data approach (value estimate based on comparable sales), and the income approach (estimating income assets on a cash basis or a crop yield basis).

Using the cost approach, Hennessey separately valued the timbered and tillable portions of Walker's land. He estimated that the before taking value of the tillable land was $2,100 per acre for a total of $42,000. He valued the timbered land at $1,500 per acre for a total of $26,700. The combined values of the tillable and timbered land resulted in a market value (from the cost approach) of $68,700 for the entire tract before the taking.

Using the market data approach, Hennessey considered and analyzed several comparable sales which were made at about the time of the taking in the general area of the Walker land. Based thereon he expressed the opinion that the market value of the Walker land was $1,950 per acre, which resulted in a proximate market value of $73,000 for the entire tract before the taking. Finally, Hennessey also considered the income approach, which resulted in a lower valuation of the property. Hennessey essentially disregarded his opinion under the income approach because the land's

proximity to the Des Moines metropolitan area gave it an increased value.

Hennessey ultimately gave the market data approach the most weight [7] in his analysis and expressed the opinion that the market value of the entire Walker tract before the taking was $73,000. Hennessey further opined that the value of the land after the taking was $58,000; therefore, the difference of $15,000 reflected his opinion of just compensation for the taking of Walker's 9.2 acres.

In reaching his valuation estimates, Hennessey testified that the highest and best use of the property was agricultural, with some potential for residential development of the timbered area in the foreseeable future. Hennessey also testified that (1) sand and gravel development was not the highest and best use of the parcel because it was too speculative and (2) the creek loss occasioned by the taking was negligible. When considered on the record as a whole, Hennessey's testimony is impressive in comparison to landowner witnesses Peters, Donohoe, Hahn, and Walker himself.

Walker alleged that sand and gravel deposits in the parcel were not properly considered by the commission. However, Hennessey considered that possibility and discussed the speculative nature of those deposits. It is our view that the commission was justified in accepting his conclusion that the parcel's highest and best use was not sand and gravel development. *See generally United States v. 91.90 Acres of Land, supra,* 586 F.2d at 87 (the value of a mineral deposit is to be considered only to the extent to which it goes into and affects the overall market value of the property). In reaching his ultimate conclusion that just compensation for the 9.2 acres was $15,000, the record shows that Hennessey considered (1) the sand and gravel potential, (2) creek loss, and (3) timber value.

The issues Walker raises in this court are essentially factual, and after careful examination of the transcript, briefs and record, we conclude that the district court's findings were not clearly erroneous. Credibility determinations are crucial to Walker's arguments on appeal, and, as we stated in *United States v. 403.14 Acres of Land, supra,* 553 F.2d at 570,

> it was not the function of the district judge nor is it our function to try the case de novo or to weigh questions of the credibility of witnesses or the weight to be given to their testimony. Those were the functions of the Commission, and its findings must be accepted unless clearly erroneous.

We cannot say that the findings below were clearly erroneous, and we affirm the judgment of the district court.

---

**7.** When available, comparable sales are ordinarily the best evidence of market value. *United States v. Ham,* 187 F.2d 265, 270 (8th Cir. 1951). *See also United States v. 1,129.75 Acres of Land,* 473 F.2d 996, 998 (8th Cir. 1973) (in general, evidence of sales of comparable property is persuasive evidence of market value, either as direct proof or in support of a witness's opinion); *United States v. 3,698.63 Acres of Land,* 416 F.2d 65, 67 (8th Cir. 1969) (sales of comparable land in the area most accurately evidence fair market value).