# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2394

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Timothy Patrick Kornwolf, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: November 12, 2001
Filed: January 16, 2002 (Corrected 3/4/02)
(Corrected 4/3/02)

_____

Before LOKEN, LAY, and HEANEY, Circuit Judges.

_____

LAY, Circuit Judge.

Timothy P. Kornwolf pled guilty to violating the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668(a), and the Migratory Bird Treaty Act, 16 U.S.C. § 703, by attempting to sell two Native American artifacts containing eagle feathers. Kornwolf entered a conditional plea of guilty to four counts of the indictment, reserving the right to withdraw the plea if, on appeal, the acts were found unconstitutional as applied to Kornwolf. At sentencing, the Government asked the district court[1] for an order requiring Kornwolf to return the $12,000 paid to him for

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, presiding.

the artifacts. The district court refused to issue such an order. Kornwolf has appealed the district court's holding that the acts do not cause an unconstitutional taking of his property.[2] We affirm.

## Facts

Kornwolf owned an American Indian headdress and Sioux dance shield. Both of the artifacts contain golden eagle feathers. Kornwolf came into possession of the artifacts through his great uncle before October 24, 1962, the effective date of the Bald and Golden Eagle Protection Act.[3] A regulation, authorized by the Migratory Bird Treaty Act, became effective after the Bald and Golden Eagle Protection Act. See 50 C.F.R. §§ 22.1, 22.2(a)(1)-(2) (2001).[4] Under the acts, it is unlawful to sell or attempt to sell eagle feathers even though they were lawfully acquired prior to the effective dates of the acts.

On November 1, 1999, Kornwolf sold the dance shield for $7000 to an undercover Norwegian law enforcement officer working with the United States Fish and Wildlife Service. Later, the undercover agent made two wire transfers to Kornwolf for the headdress totaling $5000. The headdress was later seized pursuant to a search warrant on January 19, 2000.

---

[2]Kornwolf was sentenced to three years probation with a special condition that he participate for a period of 180 days in a home detention program, which may include electronic monitoring, a fine of $2000 and a special assessment of $400. The district court stayed Kornwolf's sentence pending this appeal.

[3]"Whoever . . . shall knowingly . . . take, possess, sell, purchase, barter, offer to sell . . . any bald eagle commonly known as the American eagle, or any golden eagle, alive or dead, or any part . . . shall be fined not more than $5,000 or imprisoned not more than one year or both . . . ." 16 U.S.C. § 668(a).

[4]"The import, export, purchase, sale, trade, or barter of bald and golden eagles, or their parts, nests, or eggs is prohibited." 50 C.F.R. § 22.1 (2001).

**Analysis**

This case, at least on its face, is strikingly similar to <u>Andrus v. Allard</u>, 444 U.S. 51 (1979). In <u>Allard</u>, the Supreme Court upheld the constitutionality of the Bald and Golden Eagle Protection Act and Migratory Bird Treaty Act against a Fifth Amendment takings claim. Kornwolf contends this case is not governed by <u>Allard</u> because the recent takings cases "demonstrate both a greater solicitude to the burdens placed on property owners by governmental regulations and less willingness to assume a justifying nexus between those burdens and public purpose."

The Supreme Court has stated, "'[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'" <u>Agostini v. Felton</u>, 521 U.S. 203, 237 (1997) (quoting <u>Rodriguez de Quijas v. Shearson/Am. Express, Inc.</u>, 490 U.S. 477, 484 (1989)). Our court has adhered to this directive. <u>See, e.g.</u>, <u>United States v. Guevara-Martinez</u>, 262 F.3d 751, 754 (8th Cir. 2001); <u>United States v. Maynie</u>, 257 F.3d 908, 918 (8th Cir. 2001); <u>see also</u> <u>United States v. Singletary</u>, 268 F.3d 196, 205 (3rd Cir. 2001); <u>Montana Chamber of Commerce v. Argenbright</u>, 226 F.3d 1049, 1057 (9th Cir. 2000); <u>Figueroa v. Rivera</u>, 147 F.3d 77, 81 n.3 (1st Cir. 1998). Thus, the issue is whether <u>Allard</u> is directly controlling. <u>See</u> <u>Agostini</u>, 521 U.S. at 237.

The facts of the present case essentially mirror <u>Allard</u>. Kornwolf asserts one crucial factual distinction: <u>Allard</u> did not directly address feathers owned by an individual prior to the effective dates of the acts. However, in <u>Allard</u>, the Court's ruling extends to include feathers acquired prior to the passing of the Bald and Golden Eagle Protection Act:

The prohibition against the sale of bird parts lawfully taken before the effective date of federal protection is fully consonant with the purposes of the Eagle Protection Act. It was reasonable for Congress to conclude that the possibility of commercial gain presents a special threat to the preservation of the eagles because that prospect creates a powerful incentive both to evade statutory prohibitions against taking birds and to take a large volume of birds. The legislative draftsmen might well view evasion as a serious danger because there is no sure means by which to determine the age of bird feathers; feathers recently taken can easily be passed off as having been obtained long ago.

Allard, 444 U.S. at 58. This rationale also applies to the Migratory Bird Act, thereby enabling the ban of "commercial transactions in covered bird parts in spite of the fact that the parts were lawfully taken before the onset of federal protection." Id. at 63. Therefore, the Court's holding in Allard, "that the simple prohibition of the sale of lawfully acquired property in this case does not effect a taking in violation of the Fifth Amendment," id. at 67-68, encompasses bird feathers acquired prior to the effective date of the acts, even though not directly addressed.

Kornwolf also attempts to distinguish this case from Allard on procedural grounds. Kornwolf argues the difference between the facial challenge in Allard and Kornwolf's as applied challenge removes the present dispute from the rubric of Allard. The first alleged distinguishing characteristic is the provenance of the feathers; the artifacts, which contain eagle feathers, were acquired prior to the effective dates of the acts. As earlier demonstrated, the provenance of the artifact does not remove the present case from the confines of the ruling. See id.

The second alleged distinguishing characteristic is the value of the feathers. As demonstrated by Allard, the value is immaterial. See id. ("[T]he simple prohibition of the sale of lawfully acquired property in this case does not effect a taking in violation of the Fifth Amendment."). However, if a court were to examine the value of the feathers, which the lower court did not, it would only lend further

credence to the constitutional finding. See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194 (1985) (stating that if just compensation is received then no claim exists against the Government); Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1013 (1984) (stating if just compensation were to be received, "then Monsanto would have no claim against the Government for a taking"). Although the reasonable value of the artifacts with and without the feathers has not been established, Kornwolf did receive compensation. See, e.g., Farmland Pres. Ass'n v. Goldschmidt, 611 F.2d 233, 237-38 (8th Cir. 1979); United States v. 91.90 Acres of Land, Situated in Monroe County, Mo., 586 F.2d 79, 86 (8th Cir. 1978). Kornwolf was paid $7000 for the dance shield and $5000 for the headdress. The district court refused to order Kornwolf to disgorge the $12,000. If a court were to examine the value of the artifacts, it would be an exercise in determining whether additional compensation, beyond the $12,000, was required in order to suffice as "just compensation." Thus, instead of removing the case from the control of Allard, Kornwolf's receipt of compensation for the artifacts dictates it is more likely not to be deemed a taking without just compensation. See Allard, 444 U.S. at 67 (awarding no compensation); Williamson County, 473 U.S. at 194; Monsanto, 467 U.S. at 1013.

Kornwolf's last alleged distinguishing characteristic is that the asserted claim is in defense to criminal prosecution.[5] Although Allard did not involve criminal prosecution, it did address the constitutionality of statutes that prohibited enumerated actions and even noted the prior criminal conviction of one of the appellees under the Bald and Golden Eagle Protection Act. Allard, 444 U.S. at 54 n.2. Therefore, the Court clearly envisioned the acts' enforcement within a criminal context. Furthermore, analyzing this allegedly distinguishing fact in light of the test for takings illustrates it is a difference without a distinction. See Penn Central Transp.

[5]The parties have neither cited any authority, nor has any been found, that applies the takings clause as a defense to criminal prosecution.

Co. v. City of New York, 438 U.S. 104, 124 (1978) (stating the factors in determining a taking are the economic impact of the regulation on the claimant, the extent to which the regulation has interfered with distinct investment-backed expectation, and the character of the government regulation with regard to whether the invasion is physical or a necessary readjustment of economic benefits and burdens).

## Conclusion

Because Allard is directly controlling, this court need not examine the present case in light of recent takings cases.

Judgment AFFIRMED.

A true copy.

      Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.