UNITED STATES of America, Appellant,

v.

WINNEBAGO TRIBE OF NEBRASKA
et al., Appellees.

UNITED STATES of America, Appellant,

v.

Maurice R. CHOQUETTE et
al., Appellees.

UNITED STATES of America, Appellee,

v.

Gilbert P. JAURON et al., Appellants.

UNITED STATES of America, Appellee,

v.

Maurice R. CHOQUETTE et
al., Appellants.

UNITED STATES of America, Appellee,

v.

Calvary M. LINSCOTT et al., Appellants.

UNITED STATES of America, Appellee,

v.

WINNEBAGO TRIBE OF NEBRASKA
et al., Appellants.

Nos. 75–1873, 75–1874, 75–1895, 75–1896,
75–1901 and 75–1933.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1976.

Decided Sept. 29, 1976.

Robert Kerry, Appellate Sec., Lands & Natural Resources Div., U. S. Dept. of Justice, Washington, D. C., for appellant, United States.

John E. Echohawk, Native American Rights Fund, Boulder, Colo., for appellee, Winnebago Tribe.

Robert R. Eidsmoe, Sioux City, Iowa, for appellees, Linscott, et al.

Robert E. Beebe, Sioux City, Iowa, for appellees, Choquette and Jauron.

Before HEANEY, ROSS and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

The United States, through the Army Corps of Engineers, brought suit to acquire by eminent domain certain lands for use in the Oxbow Recreation Lakes, Snyder-Winnebago Complex, Missouri River Recreation Lakes Project. Trial was before a condemnation commission pursuant to Federal Rule of Civil Procedure 71A(h). The commission found the highest and best use of the lands taken to be recreational. It awarded compensation for those lands and severance damages for the remainders. The severance damages compensated for the diminished agricultural productivity of the remainders which, the commission found, would result from the heightened level of the ground water table caused by the impounded waters contemplated by the proposed project.[1] The United States objected to the commission's report, contending that it: (1) failed to make adequate findings as prescribed by *United States v. Merz*, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964); (2) erred in finding that the highest and best use of the lands taken was recreational; and (3) erred in awarding severance damages. The District Court upheld the commission, except that it found the highest and best use of the lands taken to be agricultural and reduced the compensation awards accordingly. All parties appeal. The United States challenges the procedural adequacy of the commission's findings and the award of severance damages. The landowners challenge the District Court's finding that the highest and best use of the lands taken was agricultural. The Winnebago Tribe of Nebraska, one of the landowners, challenges the District Court's finding that the United States has the authority to condemn the Tribe's lands.[2] Maurice Choquette challenges the District Court's finding that he was not the owner of any of the condemned land and its decision holding that the government had authority to condemn the private lands.

## I

We consider first whether the United States has the authority to take the Tribal lands by eminent domain.

It is undisputed that by the Treaty of March 8, 1865,[3] the United States agreed "to set apart for the occupation and future home of the Winnebago Indians, forever," the Tribal lands at issue. Those lands are held in trust by the United States. It is also undisputed that Congress has the power to abrogate the Treaty to permit the taking of the Tribal lands by eminent domain. The Tribe contends that Congress has not exercised that power. We agree.[4]

The Supreme Court has painted the backdrop against which the issue must be determined:

It must always be remembered that the various Indian tribes were once independent and sovereign nations, and that their claim to sovereignty long predates that of our own Government. Indians today are American citizens. They have the right to vote, to use state courts, and they receive some state services. But it is

---

1. The parties agreed, at oral argument, that the severance damages did not result from a depreciation in the value of the remainders caused by the diminution of acreage from the taking.

2. By order filed May 25, 1971, the District Court granted the United States' motion for summary judgment, finding that the Tribe's lands could be taken by eminent domain. An interlocutory appeal from that order was dismissed for want of jurisdiction. *United States v. 687.30 Acres of Land, etc., State of Neb.*, 451 F.2d 667 (8th Cir. 1971) (per curiam), *cert. denied*, 405 U.S. 1026, 92 S.Ct. 1291, 31 L.Ed.2d

486 (1972). The issue determined by the order may now be reviewed in this appeal from the final judgment.

3. Proclamation of March 28, 1866, 14 Stat. 671.

4. The Tribe also contends that the taking of their lands is in contravention of the Indian Reorganization Act of 1934, 25 U.S.C. § 476, and the regulations of the Army Corps of Engineers, 33 C.F.R. §§ 211.1–211.4. We do not address those contentions.

nonetheless still true, as it was in the last century, that "[t]he relation of the Indian tribes living within the borders of the United States . . . [is] an anomalous one and of a complex character. . . . They were, and always have been, regarded as having a semi-independent position when they preserved their tribal relations; not as States, not as nations, not as possessed of the full attributes of sovereignty, but as a separate people with the power of regulating their internal and social relations, and thus far not brought under the laws of the Union or of the State within whose limits they resided."

*McClanahan v. Arizona Tax Commission*, 411 U.S. 164, 172–173, 93 S.Ct. 1257, 1262, 36 L.Ed.2d 129 (1973) (citation and footnotes omitted).

Rights secured by treaty will not be deemed to have been abrogated or modified absent a clear expression of congressional purpose, for " 'the intention to abrogate or modify a treaty is not to be lightly imputed to the Congress.' " [5] *Menominee Tribe v. United States*, 391 U.S. 404, 413, 88 S.Ct. 1705, 1711, 20 L.Ed.2d 697 (1968). *Accord, United States v. White*, 508 F.2d 453 (8th Cir. 1974). The United States' reliance upon *Federal Power Com. v. Tuscarora Indian Nation*, 362 U.S. 99, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960), for a contrary canon of construction, *i. e.*, that the general statutes of the United States apply to Indians and non-Indians alike, is misplaced. Contrary to the facts presented here, the Indian lands taken in *Tuscarora* were not held in trust by the

United States and were not reserved by treaty. As we stated in *United States v. White, supra* at 455, the general rule of *Tuscarora* does not apply when the interest sought to be affected is reserved to the Indians by treaty. At issue in *White* was the question of whether a member of the Red Lake Band of Chippewa Indians could be prosecuted for shooting at a bald eagle within the confines of the reservation in the face of treaty rights that reserved to the Chippewa the right to hunt and fish on the ceded lands. *White* is controlling authority. Nothing in *Tuscarora* sanctions the taking of treaty lands without express congressional authorization. *Lac Courte Oreilles Band, etc. v. Federal Power Com'n*, 166 U.S.App. D.C. 245, 510 F.2d 198, 212 (1975).

The only evidence of congressional intent, argued by the parties as relevant, is a letter, dated December 31, 1943, of Major General E. Reybold, Chief of Engineers, to the Chairman of the House Committee on Flood Control [6] made in connection with the Flood Control Act of 1944, 58 Stat. 887, and portions of the hearings before the Senate and House Committees on Appropriations.[7] No reference is made to committee reports or statutory language.

The letter of Major General E. Reybold evinces an awareness that the acquisition of Indian lands would be necessary for the development of the Missouri River Basin. But no mention is made of the Oxbow Lakes, Snyder-Winnebago Complex or the Treaty of 1865 with the Winnebago Indians. Moreover, the letter can be interpreted as contemplating the acquisition of Indian

---

**5.** The requirement of specific congressional intent to abrogate treaty rights is not impractical. The case cited by the United States, *United States v. Crance*, 341 F.2d 161 (8th Cir.), *cert. denied*, 382 U.S. 815, 86 S.Ct. 36, 15 L.Ed.2d 63 (1965), is inapposite. The specific authorization necessary to abrogate the Treaty need not delineate the land to be taken by metes and bounds.

By letter to this Court, the United States Department of the Interior takes a position contrary to that asserted here by the Army Corps of Engineers and in support of the Tribe. It agrees that the intent to abrogate treaty rights must be clearly manifested by Congress and is of the opinion that the relevant statute

and legislative history fail to meet that standard.

**6.** House Doc. No. 475, 78th Cong. 2d Sess. pp. 1–5 (1944).

**7.** Hearings Before the House Committee on Appropriations, 91st Cong. 2d Sess., pt. 1 at 1534 (1970); Hearings Before the Senate Committee on Appropriations, 90th Cong. 1st Sess., pt. 1 at 1006–1008, 1331–1332, and 1334–1335 (1967); Hearings Before the House Committee an Appropriations, 90th Cong. 1st Sess., pt. 1 at 1006–1008 (1967); Hearings Before the House Committee on Appropriations, 89th Cong. 2d Sess., pt. 1 at 310–312 (1966).

lands only with the approval of the Indians affected and the Secretary of the Interior. This doubtful expression of congressional intent must be resolved in favor of the Tribe. *Bryan et al. v. Itasca County, Minnesota,* 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976); *McClanahan v. Arizona Tax Commission, supra,* 411 U.S. at 174, 93 S.Ct. 1257. Indeed, the interpretation that favors the Tribe is consistent with the later enactments of Congress [8] that specifically authorized the taking of Indian lands. *See Bryan et al. v. Itasca County, Minnesota, supra,* 426 U.S. at 387–390, 96 S.Ct. 2102; *Mattz v. Arnett,* 412 U.S. 481, 504 n. 22, 93 S.Ct. 2245, 37 L.Ed.2d 92 (1973); *McClanahan v. Arizona Tax Commission, supra,* 411 U.S. at 177, 93 S.Ct. 1257.

The portions of the hearings before the Appropriation Committees of the Congress relied upon by the United States evince a general awareness that lands would be acquired for the development of the Oxbow Lakes, Snyder-Winnebago Complex specifically. No reference is made to the fact that lands held in trust by the United States and secured to the Tribe by the Treaty of 1865 would be or could be affected by the project. The concern of the committeemen focused on the allocation of the costs between the federal and state governments. These references to the Oxbow Lakes, Snyder-Winnebago Complex made during the appropriation hearings do not indicate the clear intent of the Congress to abrogate the Treaty. The United States, through the Army Corps of Engineers, was without authority to take the Tribal lands at issue by eminent domain.

## II

We next consider the issue raised by the non-Indian landowners: whether the District Court erred in its determination, contrary to the finding of the commission, that the highest and best use of the land taken was agricultural and in its consequent re-duction of the compensation awards.[9] We hold that it did.

The District Court found error in the commission's finding as a matter of law. It was of the opinion that the commission determined the before-taking value of each tract of land by adding together the separates values for that part which had a recreational use and that part which had an agricultural use rather than valuing the tract as a whole. *See United States v. 1,162.65 Acres of Land, etc., State of Mo.,* 498 F.2d 1298, 1302 (8th Cir. 1974). While we understand how the District Court arrived at that conclusion, we are convinced, after careful review of the record, that the commission did not so err.

█ It is undisputed that portions of each tract at issue, the condemned portions, were reasonably adaptable for recreational uses. It is also undisputed that the remainders are best suited for agricultural uses. Both uses must be taken into account in the determination of the market value of the whole tract. *See United States v. 421.89 Acres of Land, More or Less, etc.,* 465 F.2d 336, 338 (8th Cir. 1972); *United States v. Carroll,* 304 F.2d 300, 306 (4th Cir. 1962). As stated by the Supreme Court:

The Fifth Amendment of the Constitution provides that private property shall not be taken for public use without just compensation. Such compensation means the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken.

*United States v. Miller,* 317 U.S. 369, 373, 63 S.Ct. 276, 279, 87 L.Ed. 336 (1943) (footnotes omitted).

The commission followed this prescription. It determined the unit value of each tract after recognizing the beneficial effect on the value of the whole tract of the adaptability of part of the tract to recreational uses.

---

**8.** *See, e. g.,* Act of Oct. 3, 1962, Pub.L. No. 87–734, 76 Stat. 698; Act of Sept. 2, 1958, 72 Stat. 1762; Act of Sept. 3, 1954, 68 Stat. 1191; Act of Oct. 29, 1949, 63 Stat. 1026.

**9.** The District Court's determination that the highest and best use of the lands taken was agricultural affected those tracts which contained partial takings.

## III

Finally, we consider the issue raised by the United States: whether the District Court erred in awarding severance damages. We hold that it did.[10]

The commission found that the impounding of waters contemplated by the proposed project would, to a reasonable probability, raise the level of the ground water table and diminish thereby the agricultural productivity of the remainders. Compensation for this damage was awarded on the authority of *United States v. Dickinson,* 331 U.S. 745, 750–751, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), and *United States v. Chicago, B. & Q. R. Co.,* 82 F.2d 131, 136 (8th Cir.), *cert. denied,* 298 U.S. 689, 56 S.Ct. 957, 80 L.Ed. 1408 (1936). But, contrary to the facts there presented, the damage to the remainders at issue does not flow incidentally from the use of the taken lands.

■ The damage to the remainders results from a direct physical invasion of that land by the waters of the United States. The invasion is a substantial one that amounts to a taking in the nature of an easement. *See United States v. Kansas City Life Ins. Co.,* 339 U.S. 799, 809–810, 70 S.Ct. 885, 94 L.Ed. 1277 (1950); *Harris v. United States,* 467 F.2d 801, 803 (8th Cir. 1972) (per curiam). The award of damages for this taking, not specified in the declaration of taking, has the effect of permitting a counterclaim in a condemnation suit. This may not be done. *United States v. 3,317.39 Acres, etc., Jefferson Co., Ark.,* 443 F.2d 104, 106 (8th Cir. 1971), *cert. denied,* 404 U.S. 1025, 92 S.Ct. 674, 30 L.Ed.2d 675 (1972). The nature and extent of the interest to be acquired by condemnation lies within the discretion of the authorized federal officials. It cannot be increased or decreased by the courts. *Id.* at 105–106.

■ The non-Indian landowners are not without a remedy. Although there was no official intention to acquire easement rights in the remainders, a constitutional taking will be implied to the extent of the actual invasion of the lands.[11] Compensation may be sought under the Tucker Act, 28 U.S.C. § 1491. *United States v. Kansas City Life Ins. Co., supra; United States v. 3,317.39 Acres, etc., Jefferson Co., Ark., supra; Eyherabide v. United States,* 345 F.2d 565, 170 Ct.Cl. 598 (1965).

## IV

Finally, we consider Maurice Choquette's contention and find them to be without merit.

■ No error was made by the trial court in striking that portion of Choquette's answer which denied the authority of the United States to take the lands in question. Rule 12(f), Fed.R.Civ.P., permits the trial court to strike an insufficient defense at any time on its own initiative. *Rosenblatt v. United Air Lines,* 21 F.R.D. 110 (S.D.N.Y. 1957); 5 Wright & Miller, *Federal Practice and Procedure,* § 1380 (1973). The defense was clearly insufficient. The Flood Control Act of 1944, *supra,* authorizes the taking of land for recreational purposes.

With respect to Choquette's contention that he, rather than the State of Iowa, and other private persons were the owners of the tract in question, we hold, after a careful review of the record, that the trial court's finding of fact as to ownership is not clearly erroneous.

The judgment and order of the District Court is affirmed in part and reversed in

---

10. We need not consider the additional issue raised by the United States: whether the District Court erred in upholding the procedural adequacy of the commission's findings. The United States' contention is directed solely at the adequacy of the findings relative to the award of severance damages. Because we hold that the award was error as a matter of law, the adequacy of the factual finding is moot.

11. Because the United States does not have the authority to take the Winnebago lands, it is conjectural whether the project will be completed. The Corps of Engineers has represented to this Court that the project cannot be constructed without the Tribal lands. Accordingly, the remainders may not suffer damage by the acts of the United States.

part. The cause is remanded for entry of judgment consistent with this opinion.

Costs in Nos. 75–1873 and 75–1933 will be taxed to the United States. Costs in Nos. 75–1874, 75–1895 and 75–1901 will be taxed equally to the appellants and appellees. Costs in No. 75–1896 will be taxed to Maurice Choquette, appellee-cross-appellant.