**UNITED STATES of America, Appellant,**

v.

**38.60 ACRES OF LAND, MORE OR LESS, SITUATE IN HENRY COUNTY, STATE OF MISSOURI and Glen Melvin Jones, et al., Appellees.**

**No. 79–1673.**

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1980.

Decided July 7, 1980.

---

Jacques B. Gelin, Atty., Land and Natural Resources Div., Dept. of Justice, Washington, D. C. (argued), Anthony C. Liotta, Acting Asst. Atty. Gen., Washington, D. C., Ronald S. Reed, Jr., U. S. Atty., Vernon A. Poschel, Asst. U. S. Atty., Kansas City, Mo., and Carl Strass, Atty., Justice Dept., Washington, D. C., on brief, for appellant.

Julius F. Wall, Poague, Brock, Wall, Eshelman & Cox, Clinton, Mo., for appellees.

Before BRIGHT, ROSS and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

The United States appeals from a final judgment entered in the district court for the Western District of Missouri awarding landowners Glen Melvin Jones and Betty Jones $45,000 as just compensation for the taking of a perpetual flowage easement across part of their farm in Henry County, Missouri. For reversal the government challenges the award of severance damages and the adequacy of the findings of the land condemnation commission under the guidelines set forth in *United States v. Merz*, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964).

For the reasons discussed below, we reverse and remand for further proceedings.

In connection with the Harry S. Truman Dam and Reservoir flood control project in the Missouri River Basin, the government, acting pursuant to a request by the Army Corps of Engineers, acquired by eminent domain a perpetual flowage easement over 52.87 acres of a 264.5 acre grain and livestock farm owned by the Joneses (herein-

after the landowners). The farm is well managed and includes many structural improvements. The property subject to the flowage easement (Tracts Nos. 3003E–1, 2, 3) covers approximately 20% of the farm and is low-lying ground along Tebo Creek, a stream which meanders through the farm and is subject to some natural flooding. Hydrological evidence before the commission indicated that the farm was subject to frequent natural flooding (once a year or once every two years) of brief duration (several hours). The property subject to the easement covered only about half the area subject to natural flooding. All the witnesses before the commission agreed that this natural flooding caused very little damage to the productivity of the farm.

Trial was before a three-person land condemnation commission appointed pursuant to Fed.R.Civ.P. 71A. The only issue was compensation. The commission awarded the landowners $45,000 as just compensation for the flowage easement, an amount which included $21,800 as severance damages

> for the loss of utility of the structural improvements due to the reduced productivity of the farm, for the impairment of access due to the flooding of the landowners' ford across the Creek, from the impaired drainage on unencumbered bottom land adjacent to the easement area, and from the spreading of debris and other undesirable matter from Truman Lake flood waters.

*United States v. 38.60 Acres of Land*, No. 76–CV–87–W–1 (W.D.Mo. June 7, 1979) (Report of the Commissioners at 26).

The government objected to the commission's report and award, contending that the commission erroneously accepted the after-taking valuation of the landowners' expert without appropriate comparable sales-market data evidence and used an improper measure of severance damages. The district court overruled these objections and

confirmed and adopted the commission's report and award. This appeal followed.

## I. Severance Damages

The government argues that the district court improperly awarded severance damages for impaired drainage and the scattering of debris on property outside the flowage easement described in the declaration of taking. The government argues that because the award in effect increased the declaration of taking or permitted a counterclaim, which is not permissible in a condemnation action, the district court exceeded its jurisdiction. *See, e. g., United States v. 3,317.39 Acres of Land*, 443 F.2d 104, 106 (8th Cir. 1971), *cert. denied*, 404 U.S. 1025, 92 S.Ct. 674, 30 L.Ed.2d 675 (1972). We agree.

When land is taken by eminent domain, the landowner is entitled under the fifth amendment to the Constitution to be paid just compensation as measured by the fair market value of the property or interest taken [1] as of the day of the taking. *E. g., United States v. 564.54 Acres of Land*, 441 U.S. 506, 511, 99 S.Ct. 1854, 1857, 60 L.Ed.2d 435 (1979). In a partial taking, whether in fee or less than a fee, the measure of damages is complicated by the concept of "severance damage." As explained by Judge Henley in a recent opinion, "[w]here the partial taking not only deprives the owner of the property that is actually taken but also diminishes the value of the property remaining to the owner, this diminution is often and 'somewhat loosely' referred to as 'severance damage.'" *United States v. 91.90 Acres of Land*, 586 F.2d 79, 86 (8th Cir. 1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979), *citing United States v. Miller*, 317 U.S. 369, 376, 63 S.Ct. 276, 281, 87 L.Ed. 336 (1943). Thus, in a partial taking, the landowner may recover as just compensation not only the fair market value of the land actually taken, but also severance dam-

---

**1.** "When . . . the title acquired is not a fee, but merely an easement, the proper measure of damages is the difference between the market value of the land free of the easement and the market value as burdened with the easement." *United States v. 1,129.75 Acres of Land*, 473 F.2d 996, 998 (8th Cir. 1973) (citations omitted).

ages[2] for the diminution in value of the remainder directly caused by the taking itself and by the use of the land taken. *See, e. g., United States v. 91.90 Acres of Land, supra*, 586 F.2d at 86–87; *United States v. Winnebago Tribe*, 542 F.2d 1002, 1007 (8th Cir. 1976); *United States v. 3,317.39 Acres of Land, supra*, 443 F.2d at 106; *accord, United States v. 101.88 Acres of Land*, 616 F.2d 762 at 767–768 (5th Cir. 1980) (excellent discussion), (*citing United States v. Grizzard*, 219 U.S. 180, 183, 31 S.Ct. 162, 163, 55 L.Ed. 165 (1911)).

■ Claims for severance damages, however, must be distinguished from claims for the "actual physical invasion of the remainder resulting from the intended use of the land taken,"[3] which are in effect counterclaims for compensation in inverse condemnation. Such a distinction is critical because the district court has no jurisdiction in a condemnation action to entertain counterclaims. *See, e. g., United States v. 3,317.39 Acres of Land, supra*, 443 F.2d at 106, *citing United States v. Sherwood*, 312 U.S. 584, 590–91, 61 S.Ct. 767, 771–772, 85 L.Ed. 1058 (1941) (United States as sovereign is immune from suit except when it consents to be sued). In a condemnation action "[t]he nature and the extent of the interest to be acquired is discretionary with the authorized federal officials. These interests are specified in the complaint and the declaration of taking, which may not be increased or decreased by the courts." *United States v. 3,317.39 Acres of Land,*

*supra*, 443 F.2d at 105–06 (citations omitted).

A court may not change the extent of a taking. The court is empowered to ascertain the accuracy with which the interests sought to be acquired are described, to award compensation accordingly, and to award damages for diminution in value of land contiguous to the land taken [that is, severance damages]. But it may not do more—in a condemnation proceeding. *United States v. 101.88 Acres of Land, supra*, at 768 (footnotes omitted). Of course, if the landowner deserves compensation for other damage to the remainder, the landowner may recover additional compensation by initiating a separate action[4] in the district court under 28 U.S.C. § 1346(a)(2) (amount less than $10,000) or in the Court of Claims under the Tucker Act, 28 U.S.C. § 1491.

Thus, the district court cannot, in a condemnation proceeding under the theory of severance damages, award compensation for counterclaims and thereby alter the declaration of taking. Unfortunately, in a particular fact situation, the distinction may be unclear "between damages allowable in the condemnation proceeding, and claims for damages that are not allowable because they seek to make the United States pay compensation, in a condemnation proceeding, for an alleged taking of land not formally condemned by the United States." *Id.* at 770. Case law in this circuit draws

---

**2.** As noted by Judge Henley in *United States v. 91.90 Acres of Land, supra*, 586 F.2d at 86 (citations omitted):

It is incorrect to think of "severance damage" as a separate and distinct item of just compensation apart from the difference between the market value of the entire tract immediately before the taking and the market value of the remainder immediately after the taking. In the case of a partial taking, if the "before and after" measure of compensation is properly submitted to the jury [or in the present case, considered by the commission], there is no occasion for the lawyers or the trial court to talk about "severance damage" as such, and indeed it may be confusing to do so. The matter is taken care of automatically in the "before and after" submission.

In the present case, of course, we are concerned not with the proper measure of damages, but with whether the challenged claims are compensable as severance damages in this condemnation action.

**3.** *United States v. 101.88 Acres of Land, supra*, at 768; *see also United States v. Winnebago Tribe, supra*, 542 F.2d at 1007 ("direct physical invasion").

**4.** Such a two-step process may seem rather inconvenient; it will, however, adequately compensate the landowner and satisfy the jurisdictional prerequisites. "In the federal system jurisdiction takes precedence over the merits." *United States v. 40.60 Acres of Land*, 483 F.2d 927, 928 (9th Cir. 1973) (per curiam).

the line between *depreciation in the value of the remainder* caused by the taking itself, by the diminution in acreage or by the intended use of the land taken, which is compensable as severance damages, and *damage to the remainder* caused by physical invasion of the remainder which results from the intended use of the land taken, which is not.[5] *See United States v. Winnebago Tribe, supra*, 542 F.2d at 1004 & n.1, 1007 (diminished agricultural productivity of remainders which resulted from raised level of ground water table caused by impounded waters of recreation complex on land taken held damage from direct physical invasion of remainders by waters of United States and not compensable as severance damage); *United States v. 3,317.39 Acres of Land, supra*, 443 F.2d at 105–06 (damages for alleged flooding of lands beyond area described in complaint and declaration of taking cannot be recovered in condemnation action); *accord, United States v. 101.88 Acres of Land, supra*, at 767–771 (if dredging of spoil on the land taken itself reduces the value of the remainder, that may be recovered as severance damages; however, dumping of spoil on remainder is not compensable in condemnation action). "A landowner's right to compensation for . . . a depreciating injury to his remainder has relation only to the affecting use that may be made to the taken part of his own tract . . . ." *Boyd v. United States*, 222 F.2d 493, 494 (8th Cir. 1955).

◼ We conclude that the claims for impaired drainage and the scattering of debris are not compensable as severance damages. The claims at issue are for damages that do not "flow incidentally from the use of the taken lands." *United States v. Winnebago Tribe, supra*, 542 F.2d at 1007. These claims are not for any diminution in the value of the remainder caused by the taking itself[6] or by the use of the land taken.[7] These claims are for damages to the remainder caused, somewhat indirectly, by the physical invasion of the remainder by waters and weed seeds from the flowage easement. The claims are in effect for the taking of lands in addition to the land described in the declaration of taking; the landowners in essence contend that the flowage easement should have been more extensive. They may not recover compensation for such claims in this condemnation action.

◼ In addition, to the extent the claim for impaired drainage is based upon the landowners' inability to complete a proposed conservation project, the mere frustration of such an improvement project is not compensable. *See, e. g., United States ex rel. TVA v. Powelson*, 319 U.S. 266, 281–82, 63 S.Ct. 1047, 1055–1056, 87 L.Ed. 1390 (1943) ("There are numerous business losses which result from condemnation of properties but which are not compensable under the Fifth Amendment."). "While the rule may appear unjust, it is well settled that the landowner is not entitled, at least within the framework of a condemnation suit, to be compensated for such consequential damages as loss of business, relocation expenses, and the like." *United States v. 91.90 Acres of Land, supra*, 586 F.2d at 87 (citations omitted).

## II. Adequacy of the Commission's Report

The government also challenges the adequacy of the commission's report under the

---

**5.** Such damage may be compensable but is not compensable as severance damages in a condemnation action. *See* note 4 *supra*.

**6.** For example, the taking may leave the remainder very small or surrounded or cut off from highway access.

**7.** For example, the land taken may be intended to be used as a gasoline storage area or a hazardous waste dump or other nuisance use. Of course, the intended use may enhance rather than diminish the value of the remainder.

It should be noted that where a government project results in taking a part of a landowner's tract and the project enhances the value of the remaining tract, the government is entitled to have the value of such enhancement set off against the value of the land taken in determining the damages the government must pay.

*United States v. Birnbach*, 400 F.2d 378, 382 (8th Cir. 1968).

guidelines set forth in the *Merz* case. Judge Henley thoroughly discussed the *Merz* guidelines and their application in this circuit in *United States v. 403.14 Acres of Land*, 553 F.2d 565, 568–70 & n.5 (8th Cir. 1977). In essence, the commission's report must clearly show the factual bases for the commission's findings and clearly indicate the path that the commission followed in arriving at its conclusion. *Id.* at 570. Here, the government argues the commission (1) erroneously adopted the after-taking valuation of the landowners' expert without any explanation or any market data support and (2) improperly calculated the award of severance damages as "a separate and distinct item of just compensation apart from the difference between the market value of the entire tract immediately before the taking and the market value of the remainder immediately after the taking," *citing United States v. 91.90 Acres of Land, supra*, 586 F.2d at 86.[8]

First, we reject the government's challenge to the commission's acceptance of the after-taking valuation of the landowners' expert. Having thoroughly reviewed the commission's report in light of this allegation of error, we note that the report is detailed and comprehensive: it describes the flowage easement and the farm; accurately states the issues and summarizes the conflicting testimony of the parties; discusses the evidence, distinguishes some points and adopts other points; and finally sets forth its market valuation findings and the basis for its conclusion. It is true that the commission distinguished the comparable sales offered by the landowners' expert in support of his after-taking valuation of the remainder. However, the commission concluded that one of the government expert's comparable sales (the Strickland sale), after some modification, was helpful and indicative of the value of the remainder.

Second, it is technically incorrect to think of severance damage as a distinct item of just compensation. *E. g. United States v. 91.90 Acres of Land, supra*, 586 F.2d at 86. In the absence of any other error, we would be reluctant to reverse a condemnation award merely because the commission's report expressly identified a specific amount of its award as severance damages, especially where the award is within the "scope of the evidence" rule,[9] that is, within the limits of the testimony. However, in light of our disposition of the severance damages issue discussed above, we must reverse and remand to the district court for further proceedings. On remand the district court should modify the amount of the compensation award in order to compensate the landowners for the flowage easement taken, including only properly allowable severance damage.[10]

---

8. The government initially argued the commission relied in part upon an erroneous interpretation of the hydrological evidence. This allegation of error was withdrawn. Reply Brief of the United States at 6 n.1.

9. "The rule is that an award of just compensation will not be disturbed if it is within the scope of the evidence. Generally, this rule can be simply applied by determining whether the award falls within the extremes of the adverse parties' experts' opinion testimony." *United States v. 11,625.65 Acres of Land*, 498 F.2d 1298, 1301 n.5 (8th Cir. 1974) (citations omitted).

The landowners' expert estimated the farm's before-taking fair market value as $279,500, the after-taking value as $216,700; the government's expert estimated the before-taking fair market value as $218,500, the after-taking value as $211,000. The landowners' valuation, which was rejected by the commission, was $290,000 as the before-taking fair market value and $215,000 as the after-taking fair market value. The commission found the before-taking fair market value was $261,700 and the after-taking fair market value was $216,700, making the difference $45,000.

10. In our opinion, the district court should be permitted under the present circumstances to conclude the litigation by making its own findings in light of our ruling on the severance damages issue, without having to send the case back to the commission. Of course, the district court in its discretion may decide instead to resubmit the case in whole or in part to the commission. *See United States v. Merz, supra*, 376 U.S. at 199–200, 84 S.Ct. at 643–644; *Government of Virgin Islands v. 2.6912 Acres of Land*, 396 F.2d 3, 5 (3d Cir. 1968); *United States v. Buhler*, 305 F.2d 319, 331 (5th Cir. 1962).

Accordingly, the judgment is reversed and remanded to the district court for further proceedings.