**UNITED STATES of America, Appellant,**

v.

**79.20 ACRES OF LAND, MORE OR LESS, SITUATED IN STODDARD COUNTY, MISSOURI; Ladell Norman, et al.; and unknown owners (Tract No. 130), Appellees.**

No. 82–1859.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1983.

Decided July 6, 1983.

Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., Thomas E. Dittmeier, U.S. Atty., Edwin B. Brzezinski, Asst. U.S. Atty., St. Louis, Mo., Jacques B. Gelin, Kathleen P. Dewey, Attys., Dept. of Justice, Washington, D.C., for appellant.

Kenneth L. Dement, Sikeston, Mo., for appellees.

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BENNETT,* Circuit Judge.

ARNOLD, Circuit Judge.

The United States appeals from a judgment awarding Boyd and Evelyn Crowell $29,900 as just compensation for the fee-simple taking of their 11.8-acre tract of land. The government contends that the trial court erred when (1) it excluded evidence of the value of the government's

---

* The Hon. Marion T. Bennett, United States Circuit Judge for the Federal Circuit, sitting by designation.

easement on the land and admitted an appraisal which disregarded the easement; (2) it allowed the landowners' expert witness to testify as to the cost of replacing a well for which the government had already reimbursed the landowners; (3) it allowed testimony of damages occurring after the taking to land outside the condemned area; and (4) it allowed the landowner to testify to the value of the land. We agree with the first three of the government's arguments and therefore reverse and remand for a new trial.

## I.

This appeal arises out of condemnation proceedings for an 11.8-acre tract of land located along the Castor River in Missouri.[1] At the time of the taking, in October 1981 the land was already subject to easements held by a power company, the Little River Drainage District, and the United States Government. The government easement had been bought in 1977. It conveyed extensive rights to the government, including the right to a well (Plaintiffs' Exhibit No. 9). The Crowells could "remove" the well by December 31, 1977,[2] but they did not do so, and the government's right to the well therefore became indefeasible. The government paid $13,500 for this easement.

At trial there was a great deal of testimony showing how extensive the government easement was. The trial judge did not, however, allow the government to state how much it paid for the easement. The landowners' attorney capitalized on this exclusion during closing argument and told the jury:

> There is not in this record one shred, one shred of evidence of one penny being paid to Mr. Crowell or his wife for both tracts [3] of land taken. Not one penny.

(Tr. 181).

Dub Crutcher, the landowners' appraisal expert, valued the land at $25,960 and testified that Mr. and Mrs. Crowell suffered approximately another $5,794 in damages as a result of the taking (Tr. 79–80). The government objected to his appraisal on the grounds that he had not taken the easement into account. The District Court overruled this objection. The government also objected to Crutcher's testimony that the landowners suffered $1,500 worth of damages because they lost their well. This objection was also overruled. Mr. and Mrs. Crowell and Crutcher testified that the government piled debris on the condemned tract. This debris spread into adjacent land still belonging to the landowners and damaged the soil, a view, and an irrigation mechanism. The government objected to Crutcher's valuation of the land because it took into account the damage to the soil of the adjoining tract. The government also objected to testimony as to other damage caused by the debris. These objections were also overruled. Finally, Mr. Crowell testified that the land was worth $40,000. The government objected to his assessing the value of the land, contending that this estimate was speculative and not grounded on any knowledge of property values. The Court allowed this testimony to come in.

Mr. Crutcher appraised the value of the land at $25,960, and total losses, as a result of the taking, at $31,754. Mr. Crowell valued the land at $40,000. The government's expert witness, Kenneth Edwards, testified that Mr. and Mrs. Crowell suffered a $975 loss. The jury awarded the Crowells $29,900.

## II.

We agree with the government that the District Court erred when it excluded evidence of the amount previously paid by the government for its easement over the land. Under the Fifth Amendment to the United States Constitution a

---

**1.** The government took this land for use in a flood-control project—the St. Francis Basin Project.

**2.** We have difficulty imagining how a well can be removed.

**3.** The government had condemned two tracts of land, the 11.8-acre tract of land at issue, and another 1-acre piece of land. The jury estimation of the latter's value is not contested.

landowner is entitled to just compensation only for the interest in land taken by eminent domain.

> [T]he Constitution does not require a disregard of the mode of ownership—of the state of the title. It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is what has the owner lost, not what has the taker gained.

*Boston Chamber of Commerce v. City of Boston,* 217 U.S. 189, 195, 30 S.Ct. 459, 460, 54 L.Ed. 725 (1910). The easement granted the government extensive rights over the land. Among other things, it allowed the government to "construct, operate, and maintain channel improvement works on, over, and across the land" and "excavate, dredge, cut away and remove any or all of said land and to place thereon dredged or excavated material" (Plaintiffs' Exhibit No. 9, p. 2). For this the government had already paid $13,500. Certainly the easement reduced the value of the land. Knowing the price of the easement would have helped the jury determine what ownership and value in the land the owners retained after the easement was conveyed in 1977 and what they therefore lost as a result of the taking in 1981. It was error for the Court to exclude this information. This error was compounded by the landowners' counsel, when, in closing argument, he alleged that they had never received even a penny for the land. The value of the easement should not have been excluded by the trial judge.

The landowners, in defense of the ruling below, invoke the general rule that prices paid by the government for property in the area are not admissible. The reason for the rule is that a landowner has a right only to market value, not to value that may be due solely to the government's purchases in connection with the same project. This reason is not at all inconsistent with allowing into evidence the amount the government had

paid the Crowells for *this* easement. The question before this jury was the fair market of what the Crowells had left—that is, the value of an unencumbered fee simple less the value of easements already conveyed. The best evidence available of the value of one of those easements was the price that had been paid for it only a few years before. Nor was the conveyance of the easement so remote in time as to make admission of the price inadvisable. If anything, allowing the jury to know what the government had paid for the easement in 1977 would be helpful to the landowners, since in all likelihood the 1977 price was less than the easement's value at the time (1981) the fee was taken. The smaller the value of the easement, the more the landowners would receive for their fee.

■ The government also contends that Crutcher did not consider the easement when he appraised the value of the land. It is not entirely clear from the record whether this is in fact the case. In any event, on remand appraisals should take into account all encumbrances on the land.

### III.

■ It was error for the District Court to allow Crutcher to testify that Crowell suffered $1,500 worth of damages because he had to replace the well. It is axiomatic that the property owner "must be made whole but is not entitled to more." *Olson v. United States,* 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934). The government had already compensated Crowell for the value of the well when it obtained the easement. The easement gave the government rights to the well. It specifies:

> There is excepted and reserved to the vendors the right to remove all improvements (a well) on or before 31 December 1977. In the event that the said buildings and improvements are not removed completely on or before said date, the right of removal shall terminate automatically, and the United States shall have a good and indefeasible title to said build-

ings or improvements which remain, without notice to the vendors.

(Plaintiffs' Exhibit Number 9, p. 3). Crowell did not lose any rights to the well at the time of the taking; he had already given up his rights to it when he granted the easement.

The deed covers a channel-improvement easement over the tract of land which is at issue in this case and a road easement over a tract of land which is not at issue here. The landowners contend that the well mentioned during trial was on the road easement and therefore "the government obviously has no cause for complaint regarding the reception of evidence of the value of that well" (Brief for Appellees at 4). This argument is without merit. It is clear from the record that the parties were discussing a well on the land at issue in this case (Tr. 95).

### IV.

The government contends that the District Court erred in permitting Crowell and Crutcher to testify about damages occurring after the taking to land outside the area of the taking and in allowing Crutcher to consider these other damages when he assessed the value of the land. Again we must agree with the government's position.

■ In this case the government took only part of Crowell's land; Crowell continued to hold land adjacent to the condemned land. A landowner recovers not just the fair market value of the land actually taken, but also the diminution in value of the remainder—severance damages.[4] *United States v. 38.60 Acres of Land,* 625 F.2d 196, 198–99 (8th Cir.1980). This Court, however, distinguishes between severance damages, compensable in a condemnation proceeding and *damages to the remainder* caused by physical invasion of the remainder resulting from the intended use of the land taken. *Id.* at 200. The latter are not compensable in the condemnation case. In *38.60 Acres of Land* we specifically held that the spreading of debris is a physical invasion and not compensable during condemnation proceedings. That type of claim is a counterclaim over which the District Court has no jurisdiction in a condemnation case.[5]

■ Crowell and Crutcher testified that the government piled mounds of dirt on the condemned land, and that as a result of erosion this dirt spread out into Crowell's remaining land and damaged it. Crops were ruined, a view destroyed, and new modes of irrigation had to be established. This is precisely the kind of damages which this Court, in *38.60 Acres of Land,* held were not compensable in a condemnation proceeding. The District Court was therefore mistaken when, over counsel's objection, it allowed Crowell and Crutcher to testify as to these damages and when it allowed Crutcher to consider the damage to the soil when he assessed the value of the condemned land.[6]

---

4. The calculus for assessing the value of condemned land was set forth in *United States v. 91.90 Acres of Land,* 586 F.2d 79, 86 (8th Cir. 1978), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979):

    Where the government condemns only part of a single holding, just compensation is to be measured by the difference between the fair and reasonable market value of the entire ownership immediately before the taking and the fair and reasonable market value of the portion not taken immediately after the taking. Where the partial taking not only deprives the owner of the property that is actually taken but also diminishes the value of the property remaining to the owner, this diminution is often and "somewhat loosely," *United States v. Miller,* 317 U.S. 369, 376, 63 S.Ct. 276, 87 L.Ed. 336 (1943), referred to as "severance damage."

5. The United States, as sovereign, is immune from suit. The landowner can, however, sue for damages in a separate action in the United States Claims Court under 28 U.S.C.A. § 1491(a)(1) (West Supp.1983) or in the District Court under 28 U.S.C.A. § 1346(a)(2) (West Supp.1983).

6. Crowell testified that as a result of the taking unauthorized hunters and fishermen might trespass on his land in the future. These damages are speculative and certainly not ascertainable at the time of the taking. Damages incurred after a taking are not compensable in a condemnation proceeding. See *Old Dominion Land Co. v. United States,* 269 U.S. 55, 65, 46 S.Ct. 39, 40, 70 L.Ed. 162 (1925). Crowell's testimony should not have been admitted.

## V.

The government also contends that Crowell's valuation of his land should have been excluded. We disagree. A landowner is presumed to have special knowledge of his property. His testimony as to the value of his land is therefore "admitted in federal courts *without further qualification.*" *United States v. 3,698.63 Acres of Land,* 416 F.2d 65, 67 (8th Cir.1969) (emphasis added). This is true even when the landowner's figures exceed the assessments made by expert witnesses. *Id.* at 66. There was nothing in Crowell's testimony to suggest that he did not have a special knowledge of his land. *Cf. United States v. Sowards,* 370 F.2d 87, 92 (10th Cir.1966) ("[W]here the presumption of the owner's special knowledge is negated by his own testimony, his opinion has no probative value and is insufficient to sustain the award.") The landowner's testimony is, of course, only one element to be considered along with the testimony of expert appraisers and whatever else is available to show fair-market value at the time of the taking. Any special value to the owner or to the condemnor must be disregarded by the fact-finding body in arriving at fair-market value. *United States v. Miller,* 317 U.S. 369, 375, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1973). The weight to be given to factual and opinion evidence on fair-market value is for the trier of fact. The District Court properly ruled that Crowell's testimony was admissible.

We reverse and remand for a new trial in accordance with the opinion of this Court.